## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

KATHLEEN URADNIK,

      Plaintiff,

  v.

INTER FACULTY ORGANIZATION,
ST. CLOUD STATE UNIVERSITY,
BOARD OF TRUSTEES OF THE
MINNESOTA STATE COLLEGES AND
UNIVERSITIES,

      Defendants.

Civil Case No.:_____

## COMPLAINT

Kathleen Uradnik, for her Complaint against the Inter Faculty Association; St. Cloud St. University; and the Board of Trustees, Minnesota State Colleges and Universities (collectively, "Defendants"), alleges as follows:

### Nature of the Action

1.    The First Amendment protects the individual rights of free speech and association, including the rights *not* to speak and *not* to associate. For example, public employees who do not belong to a labor union "should not be required to fund a union's political and ideological projects unless they choose to do so." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 315 (2012). Furthermore, "[b]ecause a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences, the compulsory fees constitute a form of compelled speech and association that imposes a significant impingement on First Amendment rights." *Id.* at 311–12 (quotations and citations omitted). As the Supreme Court has now made clear in *Janus v.*

1

*American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466, Slip

Op. (June 2018), that type of impingement on First Amendment rights is impermissible.

2.      In violation of these principles, Minnesota law authorizes state universities to

recognize a labor union as the "exclusive representative" for groups of its employees, such

that those employees are compelled to associate with the union and the union in turn speaks

for those employees—whether they want it to or not. The Defendants in this case have done

exactly that, agreeing that the Inter Faculty Association is the exclusive representative of

employees of St. Cloud State University, like the Plaintiff, whether or not they want the

Inter Faculty Association's representation or agree with its speech and petitioning of

government on their behalf. Moreover, the agreement the Defendants have executed under

Minnesota law provides that only the Inter Faculty Association may bargain as to the terms

and conditions of employment at St. Cloud State University, thereby depriving the Plaintiff

and others of the right to petition the government on their own behalf.

3.      As the Supreme Court has now recognized, "[d]esignating a union as the

employees' exclusive representative substantially restricts the rights of individual employees.

Among other things, this designation means that individual employees may not be

represented by any agent other than the designated union; nor may individual employees

negotiate directly with their employer." *Janus*, Slip Op. at 2. For that reason, and because

the union's advocacy is attributed to and on behalf of employees, that designation violates

employees' speech and petitioning rights, as well as their associational rights, in

contravention of the First Amendment.

4.      Additionally, the Defendants in this case have negotiated special preferences

for union members, including preferences that tilt the scales in union members' favor in

such matters as tenure and promotion decisions. This system unlawfully allocates state-granted benefits and state-imposed burdens on the basis of political association. That scheme, too, violates the First Amendment.

**Parties**

5.     The Plaintiff, Kathleen Uradnik, is a professor of political science at St. Cloud St. University. Dr. Uradnik is a "public employee" within the meaning of Minnesota Statute § 179A.03 subd. 13.

6.     Defendant St. Cloud State University (the "University") is a public university in Minnesota. The University is part of the Minnesota State Colleges and Universities System, which is governed and regulated by state statutes, *see, e.g.*, Minn. Stat. § 136F.10, is overseen by trustees appointed by the governor and confirmed by the Minnesota Senate, Minn. Stat. § 136F.02, and is funded from the state treasury, Minn. Stat. §§ 135A.01, 135A.031.

7.     Defendant Board of Trustees, Minnesota State Colleges and Universities (the "Board") is the Minnesota public authority charged with "all powers necessary to govern the state colleges and universities" within its purview, including St. Cloud State University. Minn. Stat. § 136F.06, subd.1. The Board is a "public employer" within the meaning of Minnesota's public-employees labor-relations code. Minn. Stat. § 179A.03, subd. 15.

8.     Defendant Inter Faculty Association (the "Union") is an "employee organization" as defined in the Minnesota public-employees labor-relations code, Minn. Stat. § 179A.03, subd. 6, and represents employees at St. Cloud State University.

**Jurisdiction and Venue**

9.      This case raises claims under the First and Fourteenth Amendments of the federal Constitution as authorized by 42 U.S.C. § 1983 and the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). Jurisdiction is proper under 28 U.S.C. § 1331.

10.     Dr. Uradnik, the Board, the University, and the Union are all residents of Minnesota. Venue is proper in this District under 28 U.S.C. § 1391(b).

**Factual Allegations**

11.     Under Minnesota law, a union may become the exclusive bargaining representative for public employees in a bargaining unit by obtaining formal recognition under Minnesota law. Minn. Stat. § 179A.12.

12.     The union can obtain this recognition in two steps.

13.     First, the union may obtain a certification election by presenting proof to Minnesota's employee-relations board that at least 30 percent of employees in a proposed bargaining unit wish to be represented by the union. Minn. Stat. § 179A.12, subd. 3.

14.     Second, if the Minnesota employee-relations board concludes that the proposed bargaining unit is appropriate under Minnesota law, it must conduct an election. Minn. Stat. § 179A.12, subds. 5–6. If the union obtains at least a majority of votes of bargaining-unit employees in the election, it is certified as the exclusive representative of employees in the bargaining unit. Minn. Stat. § 179A.12, subd. 8.

15.     A public employer must bargain collectively with a union that obtains status as the exclusive representative of some or all its employees. Minn. Stat. § 179A.13, subd. 2(5).

16.     The scope of those mandatory negotiations includes the "terms and conditions of employment" for employees of the public employer. Minn. Stat. § 179A.14, subd. 1(a). This includes "the hours of employment, the compensation therefor including fringe benefits except retirement contributions or benefits other than employer payment of, or contributions to, premiums for group insurance coverage of retired employees or severance pay, and the employer's personnel policies affecting the working conditions of the employees." Minn. Stat. § 179A.03, subd. 19.

17.     Additionally, Minnesota law identifies a class of "professional employees" and affords such employees the right "to meet and confer with a representative or committee of the public employer" regarding "all matters that are not terms and conditions of employment." Minn. Stat. § 179A.08. The statute authorizes employees of a public employer to designate a single "representative" to represent all employees of that employer. Minn. Stat. § 179A.08, subd. 2.

18.     A union's status as exclusive representative curtails the rights of employees to "express or communicate a view, grievance, complaint, or opinion on any matter related to the conditions or compensation of public employment or their betterment" where that expression of views would "circumvent the rights of the exclusive representative." Minn. Stat. § 179A.06, subd.1.

19.     Minnesota law also provides that unions and public employers may agree to deduct money from the pay checks of non-union members and pay that money to a union. Minn. Stat. § 179A.06, subd. 3. That provision is plainly unconstitutional under the Supreme Court's *Janus* decision.

20.     The Board and the Union are parties to a collective bargaining agreement with a term from 2017 through 2019. *See* Exhibit A (the "Agreement").

21.     The Agreement establishes a bargaining unit of "all faculty members" at public universities under the Board's purview.

22.     The Agreement provides that the Union is the "exclusive bargaining representative" of those persons.

23.     The Agreement provides, in a section called "Exclusive Right," that "[t]he Employer will not meet and negotiate relative to those terms and conditions of employment subject to negotiations with any employee groups or organizations composed of employees covered by this Agreement except through the Association." Art. 3, § B. The employees covered by the Agreement are all faculty members within the bargaining unit, both union members and non-members.

24.     The Agreement records the Board's and Union's negotiated points of agreement, including those pertaining to wages, benefits, grievances, the school year, workload, coaching assignments, office hours, severance, retirement, leaves of absence, and so on.

25.     The Agreement also includes Article 6 titled "Association Rights." That article allows the Union to require the Board to deduct money from the pay checks of non-union members and give that money to the Union. Under the Supreme Court's *Janus* decision, that Article is plainly unconstitutional.

26.     The Agreement also designates the Union as the representative to exercise the rights of employees of the Board to "meet and confer" about "all matters" that are not terms and conditions of employment. Art. 6, § B.

27.     Among other things, this right includes an exclusive right to "confer on the need for faculty to serve on System-level committees, *after which the [Union] shall appoint the faculty*." Art. 6, § B, subd. 1 (emphasis added). Additionally, the Agreement affords local affiliates of the Union to establish committees to meet and confer with university officials. Art. 6, § B, subd. 2.

28.     Under that Article, the Union and the University have established an extensive set of search, service, and governance committees.

29.     These committees, composed of Union-appointed faculty, exercise significant influence over affairs at the University. Express provisions of the Agreement afford the Union-run, Union-staffed committees the right to confer over such things as the University's affirmative action plan, Art. 2, § C, Subd.2, the choice of presidential designees to act in the place of the University president, Art. 5, § A, subd. 25, the workload expectations for faculty, Art. 10, § B, subd. 3, identification of duty and non-duty days for faculty, Art. 10, § D, subd. 1, the academic calendar, Art. 10 § E, compensation for coaches and athletic trainers, Art. 10 § G, subd. 4, establishing endowed chairs, Art. 11, § O, assigning positions for summer sessions, Art. 13, § D, awarding funds for professional improvement, Art. 19, § A, subd. 4, setting procedures for sabbatical leaves, Art. 19, § C, subd. 1, establishing departments and department chairs, Art. 20, § A, subd. 1, appointing department chairs, Art. 20, § D, subd. 2, compensating directors for their administrative work, Art. 20, § I, subd. 1, laying off tenured faculty, Art. 23, § A, subd. 2, setting the schedule for awarding tenure, Art. 25, § B, and establishing the standards for awarding tenure, Appendix G.

30.     In addition to the areas listed in the Agreement, the Union and the University maintain standing and special committees that cover almost every area of higher education

administration and faculty development, including but not limited to: academic affairs, assessment, accreditation, applied research, budget, curriculum, enrollment, faculty research grants, undergraduate general studies, graduate studies, international studies, and technology.

31.     In addition, the Union controls faculty appointments to all System and University search committees, from the system chancellor down to university presidents and lower-level administrators. For example, union faculty members serve on the search committees responsible for selecting their deans, who are their direct supervisors. Non-Union members cannot participate in the selection of these officials.

32.     As a practical matter, serving as a Union-appointed committee member is typically a prerequisite to advancing at St. Cloud State University. Among other things, it is a practical prerequisite to obtaining both tenure and promotion, which are separate procedures under the Agreement.

33.     Indeed, the Agreement requires faculty members to perform "[s]ervice to the university and community" as a criterion for continued employment and advancement, including tenure and promotion. Art. 22, § B, subd. 5. Appendix G of the Agreement provides examples of the types of evidence that a faculty member can show to establish this record of service. These include, among others, "serving on and contributing to program, department, school/college, university, and system committees and governance" and "participating in accreditation, program review, and assessment."

34.     With the sole exception of department-level committees, the Union assigns faculty membership on all of these committees.

35.     The Union generally excludes non-Union members from membership on these committees and leaves committee seats vacant when there are not enough Union faculty members willing to serve.

36.     The University and the Union regularly encourage faculty members to participate on search, service, and governance committees as a convenient and established form of service to the university.

37.     Service on these administrative committees is an important qualification for those seeking professional positions in higher education administration. Non-Union faculty members at the University face significant obstacles in obtaining this experience because they are excluded from participation on search, service, and governance committees

38.     Exclusion from committee service also denies non-union faculty members the ability to associate and serve with their administrators and colleagues in an ongoing professional capacity, to develop close relationships with them, and to enjoy the other intangible benefits that come with such service.

39.     Dr. Uradnik is a tenured faculty member at the University.

40.     Dr. Uradnik is not a member of the Union.

41.     Dr. Uradnik disagrees with the Union on many issues, including issues related to terms and conditions of employment and issues related to governance of the University.

42.     Due to the Union's status as exclusive representative of University faculty, the Union represents Dr. Uradnik, despite the fact that she does not consent to its representation.

43.     Due to the Union's status as exclusive representative of University faculty, the Union takes positions on behalf of and attributable to Dr. Uradnik without her affirmative consent and on issues with which she disagrees with the Union's positions.

44.     The Union takes those positions through speech, association, and petitioning of government.

45.     Because the Union is Dr. Uradnik's representative, its speech, association, and petitioning of government with parties other than the University, including its speech to the public, are undertaken on behalf of Dr. Uradnik and are attributable to her.

46.     Due to the Union's status as exclusive representative of University faculty, Dr. Uradnik has no avenue to negotiate her own terms and conditions of employment with the University.

47.     Due to the Union's status as exclusive representative of University faculty, Dr. Uradnik has no avenue to process her own grievances with the University without the Union's interference. Instead, the Union would serve as her representative, speaking on her behalf whether or not she agrees with its positions or believes that its positions further her interests. "[W]hen a union controls the grievance process, it may, as a practical matter, effectively subordinate the interests of an individual employee to the collective interests of all employees in the bargaining unit." *Janus*, Slip Op. at 16–17 (quotation marks and alterations omitted).

48.     Due to the Union's status as exclusive holder of the statutory right to meet and confer, Dr. Uradnik has no avenue to exercise the meet and confer rights the Union possesses.

49.     Dr. Uradnik desires to and has repeatedly volunteered to serve on certain committees at the University, but the Union exercises control over those appointments and will not consent to Dr. Uradnik's appointment due to her status as a non-Union faculty member.

### Count I: Designating a Union as Employees' "Exclusive Representative" Violates the First Amendment

50.     The Plaintiff incorporates and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

51.     By designating the Union as the Plaintiff's exclusive representative, Minnesota law and the Agreement violate the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

52.     That designation compels the Plaintiff to associate with the Union.

53.     That designation attributes the Union's speech and petitioning to the Plaintiff.

54.     That designation restricts the Plaintiff's speech and petitioning.

55.     The Plaintiff has no adequate remedy at law.

56.     The controversy between Defendants and the Plaintiff is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

57.     The dispute is real and substantial, as the Union continues to hold itself out as the Plaintiff's exclusive representative and its designation as such restricts the Plaintiff's rights.

58.     The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the Union's designation as the Plaintiff's exclusive representative.

59.     As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and the Union regarding their respective legal rights, and the matter is ripe for review.

### Count II: Granting Union Preferences Violates the First Amendment

60.     The Plaintiff incorporates and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

61.     By designating the Union as the exclusive representative to exercise meet and confer rights under Minnesota law and by awarding the Union the right to select individuals to meet-and-confer committees that, as a practical matter, exercise substantial influence over affairs at St. Cloud State University, the Agreement violates the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

62.     These rights discriminate against the Plaintiff and others who decline to associate with the Union.

63.     These rights attribute the Union's speech and petitioning to the Plaintiff.

64.     These rights restrict the Plaintiff's speech and petitioning.

65.     The Plaintiff has no adequate remedy at law.

66.     The controversy between Defendants and the Plaintiff is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

67.     The dispute is real and substantial, as the Union continues to hold itself out as the Plaintiff's exclusive representative and its designation as such restricts the Plaintiff's rights.

68.     The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the Union's designation as the Plaintiff's exclusive representative.

69.     As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and the Union regarding their respective legal rights, and the matter is ripe for review.

### Costs and Attorneys' Fees

70.     Pursuant to 42 U.S.C. § 1988, the Plaintiff seeks an award of costs and attorneys' fees incurred in the litigation of this case.

### Prayer for Relief

For these reasons, the Plaintiff requests that the Court:

(A)     Enter a judgment declaring that Minnesota's exclusive-representation law and the Agreement impermissibly abridge the Plaintiff's First Amendment speech, petitioning, and associational rights by designating the Union as the Plaintiff's exclusive representative;

(B)     Enter a judgment declaring that Defendants' discrimination against non-members of the Union impermissibly abridges the Plaintiff's First Amendment speech, petitioning, and associational rights;

(C)     Enter an injunction barring Defendants from recognizing the Union as the Plaintiff's exclusive representative or representative and from recognizing the Union as the exclusive bearer of meet-and-confer rights;

(E)     Enter an injunction barring Defendants from discriminating against non-members of the Union;

(F)     Make an award of costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988(b);

(G)     Grant the Plaintiff additional or different relief as the Court deems just and

proper.

July 6, 2018                          Respectfully submitted,

                                     /s/ Danyll W. Foix
                                     Danyll W. Foix (MN Bar 0285390)
Robert Alt*                          Andrew M. Grossman*
Daniel Dew*                          Mark W. DeLaquil*
The Buckeye Institute                Richard B. Raile*
88 East Broad Street, Suite 1120     BAKER & HOSTETLER LLP
Columbus, OH 43215                   1050 Connecticut Ave., N.W.
(614) 224-4422                       Washington, DC 20036
robert@buckeyeinstitute.org          (202) 861-1596 (phone)
                                     (202) 861-1783 (fax)
                                     dfoix@bakerlaw.com


* Pro hac vice motions forthcoming