UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kathleen Uradnik,                                          Civ. No. 18-1895 (PAM/LIB)

                Plaintiff,

v.                                                                        **MEMORANDUM AND ORDER**

Inter Faculty Organization, St. Cloud
State University, and Board of Trustees
of the Minnesota State Colleges and
Universities,

                Defendants.

---

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction (Docket No. 18.) For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Kathleen Uradnik is a tenured Political Science professor at St. Cloud State University ("SCSU"). She has worked there for 19 years. Plaintiff seeks to enjoin Defendants the Board of Trustees of the Minnesota State Colleges and Universities, St. Cloud State University, and the Inter Faculty Organization ("IFO") from regarding the IFO as her representative and allowing it to speak on her behalf. (Uradnik Decl. (Docket No. 19) at ¶ 10.) The IFO acts as Plaintiff's exclusive representative for purposes of negotiating, bargaining, and conferring with her public employer (SCSU).

The IFO represents Plaintiff and other faculty at public universities in Minnesota under the Public Employment Labor Relations Act ("PELRA"). Minn. Stat. ch. 179A. PELRA divides most public employees into "bargaining units" and allows the employees in each unit to designate an exclusive representative to bargain with their employer on their

behalf. See Minn. Stat. §§ 179A.06, subd. 2. The IFO was elected and certified in 1975 as the exclusive representative for teaching faculty at Minnesota's seven public universities. (Simpson Aff. at ¶ 12.) Once a bargaining unit has elected an exclusive representative, PELRA requires public employers to "meet and negotiate" with these exclusive representatives on issues surrounding the terms and conditions of employment. See Minn. Stat. §§ 179A.06, subd. 5; 179A.07, subd. 2. PELRA also grants public employees the right to "meet and confer" with their employer on matters outside the scope of mandatory negotiations; exclusive representatives speak for the employees in these sessions as well. See Minn. Stat. §§ 179A.07, subd. 3; 179A.08, subd. 2.

Plaintiff is not a member of the IFO. (Uradnik Decl. at ¶ 8.) She disagrees with the IFO on many issues and positions and claims that Minnesota law forces her to associate with the Union. (Id. at ¶ 2.) Plaintiff argues that the exclusive representation provisions of PELRA violate her First Amendment rights to freedom of speech and freedom of association. (Pl's Supp. Mem. (Docket No. 19) at 6.) Specifically, Plaintiff claims that the government is compelling her speech by allowing the IFO to speak on her behalf as the faculty's exclusive representative. (Id.)

**DISCUSSION**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue a preliminary injunction, courts consider four factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of harm the

injunction would have on the movant and the opposing party; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). The Eighth Circuit requires a "more rigorous standard for demonstrating a likelihood of success on the merits" when a plaintiff is seeking an injunction of governmental policies implemented through legislation or regulation. Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008). Under this standard, the movant must have "more than just a fair chance [of prevailing]," and rather must be "likely to prevail on the merits." Id. at 731-32.

**A.     Likelihood of Success on the Merits**

Plaintiff does not have a likely chance of success on the merits, because the Supreme Court and the Eighth Circuit have already rejected her arguments. Even if exclusive representation by a union rose to a First Amendment violation, PELRA would survive First Amendment scrutiny.

**1. Compelled Speech**

a.  Supreme Court and Eighth Circuit precedent

The Supreme Court dealt with substantially similar arguments brought by a group of community college instructors in Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271 (1984). Like Plaintiff, they argued that the exclusive representation PELRA requires violated their First Amendment speech and associational rights. Id. at 278. The Court reasoned that PELRA's requirement that the exclusive representative speak on behalf of the employees in "meet and confer" sessions did not infringe the instructors' speech and associational rights. Id. at 280. Nor had PELRA restrained appellees' freedom to speak on any education-related issue or to associate or not to associate with whom they

pleased, including the exclusive representative. Plaintiff states her argument is distinguishable from Knight because she alleges that PELRA compels her to speak through the IFO, rather than restricting her speech at "meet and confer" sessions. (Pl's Supp. Mem. at 11.) But this distinction does not render Knight inapplicable. The Court in Knight broadly rejected the appellee's First Amendment free speech arguments, indicating that the decision applies regardless of the type of speech at issue.

Additionally, a group of home care providers has already presented a compelled speech argument against PELRA in the recent Eighth Circuit case Bierman v. Dayton, 900 F.3d 570 (8th Cir. 2018). While the Court did not directly address "compelled speech," appellants made multiple compelled-speech arguments in their briefing. See Appellants' Br. at 21, 23, Bierman, 900 F.3d (No. 17-1244); see also Appellants' Reply Br. at 5, 8, 17-18, Bierman. Despite these arguments, the Bierman court still held that "[t]here is no meaningful distinction between this case and Knight." Bierman, 900 F.3d at 574.

Plaintiff also heavily relies on the recent Supreme Court ruling in Janus v. American Federation of State, County, and Municipal Employees, Council 31 for her argument that she is likely to succeed on the merits. 138 S. Ct. 2448 (2018). But Janus involved mandatory union fees paid by non-union members, not mere representation by a union. See generally id. While the Court addressed compelled speech, it noted that it is "not disputed that the State may require that a union serve as exclusive bargaining agent for its employees." Id. at 2478. The Court "simply [drew] the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views." Id. The Eighth Circuit has also distinguished the Illinois law at issue

4

in Janus from PELRA: "[r]ecent holdings in [Janus] and [Harris v. Quinn] do not supersede Knight." Bierman, 900 F.3d at 574.

The main distinction between Janus and the instant case is that the employees in Janus were required to subsidize the union through agency fees, even if they were not members or did not want to associate with the union. Janus, 138 S. Ct. at 2460. That is simply not the case here. Plaintiff is not required to pay fees, attend meetings, endorse the union, or take any other direct actions against her will. (See IFO's Opp'n Mem. (Docket No. 26) at 15.) She merely complains that the IFO compels her speech in violation of the First Amendment by acting as the exclusive representative of all faculty at Minnesota's public universities. (See Pl.'s Supp. Mem. at 6.) Although the IFO is speaking on behalf of SCSU faculty, Plaintiff is not a member of the IFO and has made that clear throughout her career. (Uradnik Decl. at ¶ 8.) The IFO speaks for the collective, and not for individual members; those individuals may speak their mind freely and speak to their public employer on their own behalf. (See Bodelson Aff. (Docket No. 34) at ¶ 7.) The Supreme Court recognized this distinction in Knight. See Knight, 465 U.S. at 276. Plaintiff has not established that she is likely to succeed on the merits of her compelled speech claim.

    b.  Level of Scrutiny

Even if Knight and Bierman did not preclude Plaintiff's compelled speech argument, PELRA would pass the required level of constitutional scrutiny for compelled speech. Plaintiff argues that strict scrutiny applies in compelled speech cases, largely because of the Supreme Court's language in Janus. (See Pl.'s Supp. Mem. at 7 n.2.) However, the Janus decision and earlier Supreme Court precedent show that "exacting"

scrutiny is the appropriate standard. In Janus, the Supreme Court declined to answer the scrutiny question definitively, stating: "we again find it unnecessary to decide the issue of strict scrutiny because the [law in question] cannot survive under even the more permissive standard [exacting scrutiny]." Janus, 138 S. Ct. at 2465. Other Supreme Court decisions considering compelled speech and association have used exacting scrutiny, or a version of exacting scrutiny as the standard. See id. at 2484.[1] Under the Janus definition of exacting scrutiny, a statute compelling speech must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." Id. at 2465 (quoting Knox v. SEIU, Local 1000, 567 U.S. 298, 310 (2012)).

Under exacting scrutiny analysis, PELRA serves a compelling state interest. First, it serves the state interest of providing Minnesota's public sector employees with representation and greater bargaining power. Second, PELRA promotes the compelling state interest of "labor peace." (See IFO's Opp'n Mem. at 36-37.) "This concept recognizes that without majority rule, confusion and conflict would result from attempting to enforce multiple agreements specifying different employment terms and that inter-union rivalries would create dissension and conflicting demands within the workforce." (Id. at

---

[1] See also U.S. v. United Foods, 533 U.S. 405, 411 (2001) ("compelled funding for advertising must pass First Amendment scrutiny"); Knox v. SEIU, Local 1000, 567 U.S. 298, 310 (2012) ("compulsory subsidies for private speech are subject to exacting First Amendment scrutiny"); Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984) (infringements on associational rights may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through significantly less restrictive means); Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc., 547 U.S. 47, 62 (2006) (compelled statements of opinion are subject to First Amendment scrutiny); Harris v. Quinn, 134 S. Ct. 2618, 2639 (2014) (agency fee provisions require passage of "exacting First Amendment scrutiny" (quoting Knox)).

36.) "'[L]abor peace,' in this sense of the term, is a compelling state interest." Janus, 138 S. Ct. at 2465.

Second, these state interests could not be accomplished through "significantly less restrictive means." The benefits unions provide to Minnesota's public employees are already tailored to minimize First Amendment speech and associational harms. The non-member faculty at SCSU are not charged an agency fee or subsidy; they are not required to join the union; they can speak out against the union and speak with their employers without the union if they see fit; they are not compelled to attend any meetings or promote the union individually. (See IFO's Opp'n Mem at 15; see also Bodelson Aff. at ¶ 8.) The exclusive representation requirement is likely the least restrictive means possible for employees who are members to still enjoy the benefits of union representation. Without exclusive representation, the Union's power and persuasion would be significantly eroded and the state interest in labor peace would be undermined. Because PELRA serves a compelling state interest and is already tailored in a non-restrictive manner, the statute passes exacting scrutiny.

Plaintiff cannot show a likelihood of success on the merits of her compelled speech argument. Knight and Bierman foreclose her claims, and regardless the statute in question survives exacting scrutiny analysis.

**2. Compelled Association**

Similarly, Plaintiff has no likelihood of success on her compelled association argument. The Eighth Circuit specifically found that Knight foreclosed a similar compelled association argument. Bierman, 900 F.3d at 574. And in Knight, the Court held

7

that instructors' associational freedom was not impaired, because they were free to form whatever advocacy groups they liked. See Knight 465 U.S. at 288-90. Because Plaintiff's compelled-association argument is virtually identical to the arguments Knight and Bierman rejected, she has no chance of success on the merits of those arguments.

**B.     Irreparable Harm**

A court must also consider whether a Plaintiff seeking a preliminary injunction will suffer irreparable harm absent the injunction. Dataphase, 640 F.2d at 113. Plaintiff argues that she will suffer irreparable harm because her First Amendment freedoms will be violated without an injunction in place. (Pl.'s Supp. Mem. at 12.) Because the Courts in Knight and Bierman rejected similar claims of constitutional harm, Plaintiff cannot show irreparable harm.

Further, she cannot show that her association with the IFO in general has harmed her. She has never been forced to join or associate with the IFO and is not a member. (Uradnik Decl. at 2.) Her lack of membership has not harmed her career, as she has received tenure, chaired her department, and even started her own programs and courses. (See IFO's Opp'n Mem. 16-19; see also Bodelson Aff. ¶¶ 4-8.) Due to a University open-door policy, Plaintiff has also been able to speak to SCSU administrators freely, without having to rely on the IFO to do so for her. (Bodelson Aff. at ¶ 7.) Further, she has even reached out to the IFO in the past for their assistance with certain matters. (IFO's Opp'n Mem. at 19-20.)

Plaintiff has not established infringement of her First Amendment freedoms, and therefore she cannot show that she will suffer irreparable harm in the absence of an injunction.

## C. Balance of Equities and Public Interest

The last two Dataphase factors regard the balance of harms between the parties and the public interest. Restricting PELRA would cause great harm to both Defendants and the public interest, undermining union protections and forcing the IFO to change its practices. Both the Eighth Circuit and Supreme Court in Bierman and Knight have found PELRA constitutional, and Janus has not changed these holdings. "[T]he [Janus] decision never mentioned Knight, and the constitutionality of exclusive representation standing alone was not at issue[.] [W]here a precedent like Knight has direct application in a case, we should follow it." Bierman, 900 F.3d at 574. Restricting a law that the Supreme Court has upheld as constitutional would cause great harm to the State and IFO, while causing no harm to Plaintiff.

## CONCLUSION

Supreme Court and Eighth Circuit precedent foreclose Plaintiff's claims, and in any event, the exclusive representation provisions in question would survive First Amendment scrutiny.

Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for a Preliminary Injunction (Docket No. 18) is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  <u>September 27, 2018</u>

<u>*s/ Paul A. Magnuson*        </u>
Paul A. Magnuson
United States District Court Judge